UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J & J SPORTS PRODUCTIONS, INC.,

        Plaintiff,

v.

BADER MATTI,

        Defendant.

_____/

Case No. 14-12981

Paul D. Borman
United States District Judge

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND AWARDING DAMAGES (ECF NO. 7)

This action arises from Plaintiff J & J Sports Production, Inc.'s ("Plaintiff") allegation that Defendant Bader Matti violated federal law by illegally broadcasting a boxing match at his bar. Defendant Matti has failed to defend or otherwise appear in this action and Plaintiff now moves this Court for entry of a Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (ECF No. 7).

Plaintiff seeks a judgment against Defendant in the amount of $110,000.00, plus attorney's fees and court costs in the amount of $2,425.70, pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(I)-(II), 605(e)(3)(C)(ii) and 605(e)(3)(C)(iii). A hearing on this matter was held on January 14, 2015 and the Defendant did not appear. For the reasons stated on the record and those set forth below, the Court GRANTS Plaintiff's motion for default and awards damages in the amount of $26,425.70.

### I. BACKGROUND

On July 30, 2014, Plaintiff filed its complaint against Defendant Matti. (ECF No. 1). Plaintiff alleges in its complaint that, pursuant to contract, it has the exclusive nationwide television

distribution rights for the " *'Floyd Mayweather, Jr. v. Miguel Cotto, WBA World Light Middleweight Championship Fight Program*" and all of its undercard preliminary bouts (collectively "the Program") that were telecast nationwide on Saturday, May 5, 2012. (Compl. ¶ 11). Plaintiff asserts that Defendant Matti is the former owner, officer, operator, or otherwise the person in charge of 150 West Café, LLC. (*Id.* at ¶ 9)[1]. Plaintiff, in an attempt to combat piracy of its programs, hires investigative agencies who retain auditors who visit various commercial locations that have no record of paying the required fee. For a "commercial fee", a commercial establishment can receive an unscrambled signal enabling the business to view the program either through Plaintiff or an authorized distributor. The fee is determined by the number a "Rate Card" that ties the fee to the seating capacity of the business. (*See* Mot., Ex. 6, Rate Card). Plaintiff claims Defendants illegally broadcast the Program to the patrons of 150 West Café on May 5, 2012 in violation of the Communication Act of 1934, as amended, 47 U.S.C. § 605, *et seq.*, and the Cable & Televison Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553, *et seq.* (*Id.* at ¶¶ 9-24; *see also* Mot. Ex. 5, Taylor Aff.). Plaintiff also claims that the broadcast constituted conversion. (*Id.* at ¶¶ 25-28).

Plaintiff provides that Defendant Matti was served on September 8, 2014. (Mot., Ex. 2). On October 3, 2014, Plaintiff requested a entry of a Clerk's default against Defendant Matti which was entered the same day. (ECF Nos. 5, 6).

---

[1] The Court takes notice here, as it did on the record, that Plaintiff previously submitted documents in a separate case involving the same parties but a different broadcast that evidence that Defendant Matti is the sole member and owner of the now dissolved 150 West Café, LLC. *See J & J Sports Productions, Inc. v. Matti*, case no. 13-13963 (ECF No. 16, Exs. E, G).

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 55(b) a judgment by default may be entered against a defendant who has failed to plead or otherwise defend against an action. In order to obtain judgment by default, the proponent must first request the clerk's entry of default pursuant to Rule 55(a). *See Hanner v. City of Dearborn Heights*, No. 07-15251, 2008 WL 2744860, at *1 (E.D. Mich. July 14, 2008). Once a default has been entered by the clerk's office, all of a plaintiff's well-pleaded allegations, except those relating to damages, are deemed admitted. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995), *see also Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citation omitted). Once a default is obtained, the party may then file for a default judgment by the clerk or by the court. FED. R. CIV. P. 55(b). If the plaintiff's well-pleaded allegations are sufficient to support a finding of liability as to the defendant on the asserted claims, then the Court should enter a judgment in favor of the plaintiff. *See Cross*, 441 F. Supp. 2d at 848. Although Rule 55(b)(2) does not provide a standard to determine when a party is entitled to a judgment by default, the case law sets forth that the court must exercise "sound judicial discretion" when determining whether to enter the judgment. Wright & Miller, 10A Federal Practice & Procedure, § 2685 (3d ed. 1998) (collecting cases). After a court determines that a default judgment should be entered, it will determine the amount and character of the recovery awarded. *See id.* § 2688 (collecting cases).

## III. ANALYSIS

A.  Sufficient Service

"Because a party has no duty to plead until properly served, sufficient service of process is a prerequisite to entry of default. *Russell v. Tribley*, No. 10-14824, 2011 WL 4387589, at *8 (E.D.

3

Mich. Aug. 10, 2011) (collecting cases). The Federal Rules of Civil Procedure provide that a competent individual within the judicial district of the United States may be served by:

(1) following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

    (A) delivering a copy of the summons and the complaint to the individual personally;

    (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

    (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e).

In the instant case, the record reveals that Plaintiff was served on September 8, 2014 by certified US mail, return receipt requested with restricted delivery to Defendant Bader Matti. (Mot. Ex. 2; ECF No. 5, Aff. Attached to Request for Clerk's Entry of Default). Plaintiff has also supplied a signed copy of the return receipt evidencing Defendant Matti's signature.[2] (*Id.*). This type of service comports with Michigan Court Rule 2.105 which provides that process may be served on a resident or nonresident individual by either "delivering a summons and a copy of the complaint to the defendant personally" or by sending copies "by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant

---

[2] The Complaint lists Defendant Matti's address as "41719 Garden Way Drive Sterling Heights MI 48314-3833" (Compl. ¶ 8), however, he was served (and signed for the mailing) at 2953 Squire Court Troy, MI 48098. The Court sent notice of the current hearing to both of these addresses, however, the notice sent to the Garden Way Drive address was returned as undeliverable. (*See* ECF No. 9).

4

acknowledges receipt of the mail. A copy of the return receipt <u>signed by the defendant</u> must be attached to proof showing service". Mich. Ct. R. 2.105(1)(a)-(b) (emphasis added). Therefore, Plaintiff has established that Defendant Matti was properly served in this action.

Accordingly, the Court considers all of Plaintiff's well-pled allegations admitted. *See Cross*, 441 F. Supp. 2d at 846. Therefore, the Court's inquiry then becomes whether Plaintiff's allegations are sufficient to support his claims and whether an award of damages is appropriate.

B.  Violations of 47 U.S.C. § 605 and § 553

Pursuant to 47 U.S.C. § 553(a)(1), "no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator". Section 605(a), on the other hand, applies to satellite transmissions and provides in relevant part that a person who receives, transmits, or assists in transmitting any communication by wire or radio may not divulge or publish that communication. *See Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 911 (6th Cir. 2001) (noting the Cable Communications Policy Act of 1984 was enacted to "address a problem which is increasingly plaguing the cable industry – the theft of cable service."); *see also Joe Hand Promotions, Inc. v. KSD, Inc.*, No. 3:13CV951, 2014 WL 4675264, *6-7 n.1 (N.D. Ohio, Sept. 18, 2014) (examining the legislative histories of both statutes and noting in a footnote that there is some struggle regarding the interplay between the two statutes). In this current action, where Plaintiff does not know how the Defendant pirated the signal (via satellite or through over a cable system) it is pro forma to plead both statutes, however, a Plaintiff cannot collect damages under both statutes. *See J & J Sports Productions, Inc. v. Trier*, 2009 U.S. Dist. LEXIS 6415 (E.D. Mich. Jan. 29, 2009); *Joe Hand Promotions, Inc. v. Granada Lounge, Inc.*, 11-13062, 2012 WL 447272, *2 (E.D. Mich. Feb. 13,

2012).

Plaintiff's complaint, motion for default, and attached exhibits establish that Defendant violated both § 605 and § 553 by intercepting and displaying the Program on Saturday, May 5, 2012 at his establishment, 150 West Café, LLC, located at 150 W. Jefferson Avenue, Detroit, Michigan ("the bar") for the purpose of direct or indirect commercial advantage and private financial gain. Specifically, Plaintiff provides that (1) Defendant did not pay to receive or publish the Program (Compl. ¶ 14); (2) Defendant is the "former owner, officer, shareholder, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management" over the bar, 150 West Café, LLC (Compl. ¶ 9); (3) the commercial rate charged to a business with seating of 101-200 was $4,200 (Mot. Ex. 6, rate card); and (4) an auditor, Darin Taylor, hired by Plaintiff visited the bar on May 12, 2012 at approximately 11:00 PM and observed that approximately 120 people were in the bar, which had four televisions displaying the Program, and that there was a twenty dollar cover charge to enter the bar to watch the Program. (Compl. ¶14; Mot. Ex. 5, Taylor Aff.).

Courts in this district and elsewhere have held that to state a claim against an individual under § 605 or §553, a plaintiff must allege facts establishing that the individual had a right and ability to supervise the infringing activities and that the individual had a direct financial interest in those same activities. *See Joe Hand Prod., Inc. v. Cain*, No. 06-12213, 2006 WL 2466266, at *2 (E.D. Mich., Aug. 24, 2006); *J & J Sports Productions, Inc. v. Stanley*, 2014 WL 2763635 (E.D. Mich. June 18, 2014) (granting motion for default judgment against individual defendants where the plaintiff had pled the individual defendant had supervisory control over the activities and received a financial benefit); *J & J Sports Prods., Inc. v. Walia*, 2011 WL 902245 *3 (N.D. Cal. Mar. 14,

2011) (collecting cases and observing "[i]ndeed, it appears that all courts addressing the issue have applied the copyright standard for individual liability to violations of § 553 and § 605."); *J & J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp.2d 498, 501 (S.D.N.Y. 2008). Here, Plaintiff has alleged that Defendant was the "principle, subsidiary, alter ego, officer, director, shareholder, employee, agent, and/or other representative" of the 150 West Café, LLC and also the "individual with dominion, control, oversight and management" of the 150 West Café, and that Defendant received a private financial gain in relation to the display of the Program. (Compl. ¶¶ 8, 14-15; *see also J & J Sports Productions, Inc. v. Matti, et al.*, case no. 13-13963, ECF No. 16, Exs. E, G).

Taking these well pled allegations as true, the Court finds that Plaintiff has established individual liability as to Defendant pursuant to § 605 and § 553.

As the Plaintiff correctly notes, when a defendant is liable under both § 553 and § 605, the plaintiff may only recover under one of those sections. *See Stanley*, 12-14093, 2014 WL 2763635, *2 (E.D. Mich. June 18, 2014) (citing *Trier*, 2009 U.S. Dist. LEXIS 6415 (E.D. Mich. Jan. 29, 2009)). In the present case, Plaintiff elects to recover under 47 U.S.C. § 605.

Pursuant to § 605, the "aggrieved party" may chose between actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Plaintiff has requested statutory damages. (Mot. at 9). As set forth in the statute, Plaintiff can recover statutory damages for each violation in the sum of not less than $1,000 or more than $10,000 as determined by the Court. 47 U.S.C. § 605(e)(3)(C)(i)(II). However, where the court finds that the violation was committed "willfully and for the purposes of direct or indirect commercial advantage or private financial gain" the court can increase the award by the amount of $100,000 per violation. 47 U.S.C. § 605(e)(3)(C)(ii).

Plaintiff asserts that the violation at issue in this case was a willful violation based on the fact

that the Program was exhibited in a commercial establishment and the bar also displayed a second unauthorized program, the "*'Star Power' Floyd Mayweather, Jr. v. Victor Ortiz, Championship Fight Program*" fight or one of its undercard preliminary bouts in September, 2011 as evidenced by a separate action by the same name, case no. 13-13963.

"The damages awarded by the Court 'should take into account the proportionality between the loss suffered by the plaintiff and the profit gained by the defendant.'" *Granada Lounge, Inc.*, 11-13062, 2012 WL 447272, *2 (quoting *Ribeiro*, 562 F. Supp. 2d at 501). Courts in this district have looked to certain relevant facts to determine a damage award including the number of patrons at the time of the violation, the seating capacity of the establishment, the rate charged by the plaintiff for the broadcast, whether the defendant charged a cover to patrons or "was likely to have obtained significant profits in another manner." *Id.* (quoting *Trier*, No. 08-11159, 2009 U.S. Dist. LEXIS 6415, at *3). In *Trier*, the court explained that

> When the exact number of patrons is unknown, courts will award a flat sum based on considerations of justice. When the exact number of patrons is known, the court will base the award on the number of patrons in the establishment who viewed the unauthorized showing multiplied by a number set by the court. This number varies widely from $20 to $300, although most courts set a number around $50.

*Id.*, No. 08-11159, 2009 U.S. Dist. LEXIS 6415, at *3 (quoting *Ribeiro*, 562 F. Supp. 2d at 501-02) (internal citation and quotation marks removed)).

In this case, Plaintiff has set forth that there were approximately 120 patrons at the bar and a $20 cover was being charged to view the Program. (Mot., Ex. 5). Plaintiff's commercial rate based on the number of people in the bar at the time of the fight was $4200 pursuant to its rate card. (Mot., Ex. 6). The Plaintiff does not provide the residential rate that it would have charged for the

8

fight, although it is logical to assume it would be much less than the commercial rate.

In the present case, the number of patrons in the bar is known - 120. Therefore, the Court is inclined to follow the direction of other courts in this district who have found *Trier* and *Ribeiro* instructive and have taken the number of patrons in the bar and then multiplied that number by dollar amount somewhere between $20 and $300. *See Ribeiro*, 562 F. Supp. 2d at 501-02 (ultimately multiplying the number of patrons by the pay-per-view residential rate of $54.95 and then doubling that amount to $1,500 to meet the statutory minimum, and then multiplying that amount by three because the violation was wilful); *see also Granada Lounge*, 2012 WL 447272, at *2-3 (finding that the commercial rate defendant would have been charged (rounded up to the statutory minimum) was appropriate while the higher base award of $10,000 was not justified because a cover was not charged and there were only 68 to 79 people in attendance, but then multiplying the $1,000 base award by three for wilfulness.); *Trier*, 2009 U.S. Dist. LEXIS 6415 at *3 (finding that where there were only 21 people at the establishment, where no cover was charged, and the commercial rate would have been $1600, the court found that $1600 was an appropriate base award and multiplied by three based on the wilfulness of the violation.). Here, there were more than 100 people in attendance and Defendant was charging a $20 cover charge. Defendant also displayed at least one other unauthorized program. Therefore, the Defendant in this case is distinguishable from the defendants in *Ribeiro*, *Trier*, or *Granada Lounge* none of whom charged their patrons a cover charge and none of whom displayed another unauthorized program. Plaintiff has not supplied any evidence of the residential rate. Given all these facts, the Court finds that a flat $50 per patron fee (120 patrons multiplied by $50 = $6000) is an appropriate base award.

Plaintiff's allegations and evidence also establish that the violation was wilful. Therefore,

consistent with its treatment of this issue in *J & J Sports Productions, Inc. v. Matti*, case no. 13-13963, the Court will multiply the base award by four (4) in light of the fact that a cover was charged and because Defendant also broadcast a similarly unauthorized program in September 2011. This results in an award of $24,000 ($6000.00 multiplied by 4 = $24,000.00). This is less than the $110,000 Plaintiff seeks but appropriate and more proportional given the loss of potential revenue by Plaintiff and the profit gained by Defendant.

Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), the court "shall direct the recovery of full costs, including awarding reasonably attorneys' fees to an aggrieved party who prevails." In the present case, Plaintiff has submitted an affidavit requesting a total of $2,425.70 in fees and costs. (Mot. Ex. 6, Invoice). Plaintiffs' counsel requests a billable rate of $200.00 per hour for a total of 9.4 billable hours and $451.70 in costs ($400 filing fee and $51.70 in mailing, and copying fees). Plaintiff has submitted the economics of law practice in Michigan Report to support its contention that a $200.00 billable rate is reasonable. (Mot., Ex. 8). The Court concludes that $200 is a reasonable billing rate, as the median billable rate for an attorney in private practice in Michigan in 2010 was $215, and finds that the request of attorney fees and costs in the amount of $2,425.70 is reasonable. (Ex. 8 at *7). Therefore, the Court will award Plaintiff a total award, including attorney fees and costs, of $26,425.70.

## IV. CONCLUSION

For all these reasons, the Court GRANTS Plaintiff's Motion for Default Judgment and AWARDS damages in the amount of $26,425.70. (ECF No. 7).

IT IS SO ORDERED.

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: MAR 0 3 2015

PURSUANT TO RULE 77 (d), FED. R. CIV. P.
COPIES MAILED TO ATTORNEYS FOR ALL
PARTIES ON March 3, 20 15
_____
DEPUTY COURT CLERK